[L. A. No. 705.    Department Two.—July 9, 1900.]

## MILTON WOLFSKILL, Appellant, v. LOS ANGELES RAIL-WAY COMPANY, Respondent.

NEGLIGENCE—FINDINGS—SUFFICIENCY OF EVIDENCE — SUPPORT OF JUDG-MENT.—In an action for a personal injury alleged to have been caused by the negligence of the defendant, in order to support a judgment for the plaintiff, it must appear both that the defendant was negligent and that the plaintiff was free from negligence, if there is no evidence tending to show that defendant's conduct was wanton or willful. But, in order to support a judgment for the defendant, it is sufficient if it appears either that the plaintiff was negligent, or that the defendant was free from negligence, and it is not necessary that findings upon both of these points should be sustained by the evidence.

ID.—INJURY FROM FRIGHTENED HORSES—CONFLICTING EVIDENCE.—Where the plaintiff was injured from being struck by frightened horses driven by the defendant, and the court found that at the time of the injury the driver of the team was free from negligence, and that the plaintiff was then negligent in going in front of the horses as they approached him, without looking or taking care to avoid being run against by them, and the evidence was substantially conflicting upon both points, the decision in the trial court as to the weight of the evidence cannot be reviewed upon appeal; and there being some evidence to justify the findings, the judgment for the defendant cannot be disturbed.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Walter Van Dyke, Judge.

The facts are stated in the opinion.

S. O. Houghton, and Charles D. Houghton; for Appellant.

Bicknell, Gibson & Trask, for Respondent.

CHIPMAN, C.—Action for personal injury. Jury trial was waived; the trial was by the court, and defendant had judgment. The appeal is from the judgment and from the order denying plaintiff's motion for a new trial. The injury occurred at the crossing of Aliso and Alameda streets in the city of Los Angeles. A team of horses, owned by defendant, was being

driven by an employee of defendant along Alameda street at a point where the track of the Southern Pacific Company's railroad runs along the middle of said street. The driver was going north along the east side of the street, but as he came near Aliso street, noticing a train of cars coming toward him, he crossed the track, for some unexplained reason, to the west side of Alameda street, and continued along that side of the latter street toward the crossing of Aliso street. Plaintiff was a flagman of the Southern Pacific Company, and his duty was to flag trains at this crossing. Defendant's evidence showed that plaintiff started from the curb on the west side of Alameda street, and near the crossing of the two streets, to go toward the middle of Alameda street about the time defendant's horses were approaching the corner. The horses became frightened by the train at that moment coming along Alameda street; the horses shied away from the train and toward the curb, and in doing so the near horse struck the plaintiff and knocked him down, thus injuring him.

The court, in its second and third findings, found in effect: 1. That at the time of the injury the team was not being driven carelessly or negligently, nor at a speed dangerous to the lives or limbs of persons on said Alameda street, and that the driver exercised due care and was not guilty of any negligence; 2. That at the time plaintiff received the injury he was not exercising ordinary care, and was guilty of negligence in this: "That he went in front of said pair of horses as they approached him, and did not look out to avoid being run against by them, and did not pay attention to the approach of said horses and said wagon, and did not take any care or caution whatever to avoid being run against by said horses."

The ground of the appeal is that the evidence does not support these findings. It is not necessary that the evidence should sustain both these findings in order to support the judgment. To have found for plaintiff it must have appeared that defendant was negligent and that plaintiff was free from negligence, there being no evidence tending to show that defendant's conduct was wanton or willful.

The evidence is sharply conflicting upon some material points touching plaintiff's negligence in not heeding the warning given

him, and as to the want of care on the part of defendant's
driver. It was the province of the court to reconcile the con-
flicts and pass upon the weight to be given the evidence. We
can do no more than look into the evidence far enough to dis-
cover whether or not there was sufficient to sustain the findings..

The driver testified that when he first saw plaintiff he (plain-
tiff) was standing on the southwest corner of the two streets,.
and that he was walking very slowly toward the middle of Ala-
meda street; witness testified that he thought he was about to
stop; witness thought there was plenty of room to pass plaintiff..
"The train frightened my horses, and they crowded over toward
him, and the near horse struck him." He was asked when he
observed plaintiff's dangerous position if he could stop his
horses, and answered: "No, sir, not at that time. I was using
every effort to do so. The horses were frightened by the engine.
. . . . I have handled teams ever since I was old enough to han-
dle them, and I am thirty-six years old. I hallooed at this man..
Mr. Hartwell (who was in the wagon) hallooed at the top of his
voice. When we hallooed at him he had plenty of time to get
out of the way." The witness Hartwell testified: "As we got
pretty near to the corner the flagman [plaintiff] stepped down
from the curb to walk out toward the center of the street, and
the horses struck him with their breasts and run over him. To
attract his attention we called to him to look out, or 'hello,' or
something to that effect. I did so. . . . . The driver hallooed.
The horses were frightened on that occasion. . . . . The occa-
sion of their fright was the train passing—the engine and cars.
. . . . I saw him step down from the curb before we got there..
When he was hit I should say he was some four or five feet from
the curb. The driver at the time was trying to pull the horses
away from him. He was walking slow. . . . . We were, I could
not say how far, some forty feet—thirty or forty feet—from the
southwest corner of the street when I first saw Mr. Wolfskill. I
was sitting by the side of the driver in front. . . . . When I
first saw Mr. Wolfskill he was on the walk. The train was com-
ing and he stepped down—the train was coming from the north.
. . . . Question by the Court: Did that train cause the shying to
occur? A. Yes, sir." The witness Hubbard, who was in the
wagon, testified: "We went north on Alameda street, and on the

east side of the street, somewhere between Commercial and Aliso, we crossed from the east to the west side. When near the corner of Aliso and Alameda the train came along and scared the horses. They started, and the driver done all he could to hold them, and the flagman was standing out somewhere near the corner, and they hollered at him to look out. Apparently he didn't seem to move, and the neckyoke of the wagon hit him and knocked him down and the near horse stepped on him." He testified that the horses appeared to be frightened at the approaching engine. "Question. Could he have gotten out of the way when they hollered at him? A. I believe he could if he had tried." Plaintiff's evidence tends to contradict the facts as above narrated in some particulars, and it tends in some degree to show carelessness on the part of the driver and to exculpate plaintiff from the charge of having contributed to his injury by his want of care. The question, however, of the weight of the evidence and as to where the preponderance lay, and as to how far the statements of witnesses were to be taken as true, was for the trial court to determine and cannot be reviewed here. We think there was sufficient evidence to justify the findings, and the judgment and order must therefore be affirmed, and we so advise.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Temple, J., Henshaw, J.