Filed 8/20/20  P. v. Rivera CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B297551 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA459245) |
| v. | |
| ALBERTO RAFAEL RIVERA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

A jury found Alberto Rafael Rivera guilty of attempted murder and shooting at an occupied vehicle. On appeal, he contends there was insufficient evidence he either directly perpetrated the crimes or aided and abetted them. We disagree and affirm the judgment.

## BACKGROUND

I.    The attempted murder

Rivera was jointly tried with fellow Easy Rider gang members Ronald Hernandez and Dario Alfaro for attempted murder and shooting at an occupied vehicle. Rivera's gang moniker was Drowzy, Hernandez was known as both Stranger and Muerto, and Alfaro's gang moniker was Lil Boy.

The victim testified that on July 13, 2017, at 2:20 p.m., he was driving to a friend's house. He was in the area of Washington Boulevard and Westmoreland in his Mustang when he heard someone yell. Assuming that someone he knew had called to him, he made a U-turn and stopped in front of an apartment building where three Hispanic men had been standing, two of whom the victim identified as Hernandez and Rivera. Hernandez and Rivera walked up to the victim, who said, "What's up?" Hernandez and Rivera threw gang signs and replied, "Riders." The victim did not associate with gangs, so he left. Hernandez then threw something at the victim's car.

Later, as the victim was taking a shortcut through a nearby car wash, he saw Hernandez and Rivera in a Mercedes. Hernandez was driving, and Rivera was the front passenger. The victim could not tell if anyone else was in the car. The Mercedes made a U-turn to follow the victim. The victim saw Rivera reach down towards his feet. As the Mercedes got closer, the victim

sped away.  When the victim turned onto another street, he heard his pursuers revving the engine, and then the Mercedes ran into the victim's car.  Multiple gunshots then struck the victim's car.

A witness saw the victim's Mustang speed up from behind him and a Mercedes crash into the Mustang.  Someone fired a revolver three to four times from the passenger side back seat of the Mercedes.  However, the witness could not tell how many people were in the Mercedes and saw none of their faces.

Around the time of these events, at 2:32 p.m., Alfaro texted his girlfriend that if she got "a jail call[,] answer."  He later told her that he, Hernandez, and another guy had an altercation with someone whom they chased and crashed into.  He said they were in Hernandez's car, and shots were fired.  The day after the shooting, Alfaro told his girlfriend he had to find the gun, which he called the "bitch," and move it.[1]  He was going to look for the gun near Hernandez's house, and he was waiting for Drowzy to get back to him.  Alfaro also told his girlfriend that they acquired the gun three days before the shooting.

The day before the shooting, Rivera had complained to Alfaro in text messages that Hernandez was keeping the gun from him.  Another Easy Rider gang member known as "Kasper" resolved the dispute by designating Alfaro to be "on point," meaning in charge of the gun.  Kasper instructed that the gun was for emergencies only and that Alfaro should keep it unless either Kasper or "Sparks" (another Easy Rider) asked for it. Alfaro confirmed that he had the gun.

---

[1] Law enforcement never recovered the gun.

The night of the shooting, Kaspar asked Alfaro if the "girl is cool." Alfaro responded that he had moved "her to a better spot me and 'Strange' know."

The day after the shooting, Rivera told Alfaro via Facebook that Strangers had been arrested, and "someone followed us and snitched."

## II. The defense

Hernandez testified in his defense. He admitted having the gun in the days preceding the shooting, but he gave it to Alfaro the morning before the shooting. On the day of the shooting, Hernandez was hanging out with Alfaro and Rivera. However, Hernandez did not witness the verbal exchange Alfaro and Rivera had with the victim. Hernandez, Alfaro, and Rivera got into Hernandez's car to go to the park. Hernandez drove, Alfaro was in the backseat, and Rivera was the front seat passenger. When they happened upon the victim, Rivera said that he was going to "dump on" him and pulled out a gun. Alfaro said that he wanted to be the one to shoot the victim. Although Hernandez tried to drive in a manner to avoid any confrontation, Rivera shot at the victim.

## III. Verdict and sentence

A jury found Rivera guilty of willful, deliberate, and premeditated attempted murder (Pen. Code,[2] §§ 187, subd. (a), 664, subd. (a); count 1) and of shooting at an occupied motor

---

[2] All further statutory references are to the Penal Code.

4

vehicle (§ 246; count 3).[3]  As to both counts, the jury found true gang (§ 186.22, subd. (b)) and principal gun use (§ 12022.53, subds. (b), (c), (e)(1)) allegations.

On April 24, 2019, the trial court sentenced Rivera on count 1 to life with a minimum parole eligibility of seven years plus 20 years for the gun enhancement (§ 12022.53, subds. (c) & (e)).  The trial court imposed but stayed sentences on the remaining count and enhancements.

## DISCUSSION

Rivera contends there is insufficient evidence he either directly perpetrated the offenses or aided and abetted them.  We disagree.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also

---

[3] The jury acquitted Rivera of assault with a deadly weapon (§ 245, subd. (a)(1); count 2).  The jury found Hernandez and Alfaro guilty of the same crimes, allegations, and vandalism.

5

reasonably be reconciled with a contrary finding.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

Shooting at an occupied vehicle requires a willful and malicious shooting of a firearm at an occupied vehicle.  (§ 246.) "Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing."  (*People v. Lee* (2003) 31 Cal.4th 613, 623.) To "be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill." (*Id.* at p. 624.)  " 'A "person aids and abets the commission of a crime when [that person], acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense[;] (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." ' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)  Factors relevant to aiding and abetting are presence at the scene of the crime, companionship, and conduct before and after the offense.  (*Ibid.*)

Here, there was sufficient evidence Rivera was either the direct perpetrator or an aider and abettor.[4]  As to Rivera being the shooter, the victim saw Rivera reach down towards his feet. Hernandez heard Rivera say he was going to "dump on" the victim and saw Rivera shoot at the victim.  That key evidence

---

[4] The prosecutor told the jury it need not determine who was the shooter to find all three men guilty of the crimes.

6

Rivera was the shooter came from his codefendant is irrelevant; the jury was entitled to consider Hernandez's testimony. And as to that testimony, we may not reevaluate a witness's credibility or reweigh the evidence. (*People v. Brown* (2014) 59 Cal.4th 86, 106.) We therefore disagree with Rivera's suggestion that the jury must have disbelieved Hernandez because it found him guilty of the offenses. To the contrary, the jury could have believed that Hernandez was lying about the extent of his role in the crime but telling the truth that Rivera was the shooter. A trier of fact may accept part of the testimony of a witness and reject another part, weaving a cloth of truth out of the evidence. (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67–68.)

Rivera next argues that there is insufficient evidence he aided and abetted the crimes, as it is "equally possible" the shooter intended merely to scare or to intimidate the victim rather than to kill him. This argument is another improper request to reweigh the evidence on appeal. In any event, the evidence is sufficient to show Rivera's specific intent to kill the victim. The day before the shooting, Rivera complained to fellow gang members that he wanted a gun, which was ultimately given to Alfaro to safeguard. Notwithstanding evidence that Alfaro was supposed to be in charge of the gun, Rivera knew about and, inferentially, had access to it.

Rivera and Hernandez then had an angry verbal exchange with the victim during which someone called out their gang name. When the victim left, they pursued him. Thus, Rivera was not merely present in the car by happenstance. He was in the car to go after the victim. And although gang evidence alone cannot prove a defendant is an aider and abettor to a crime (*People v. Guillen* (2014) 227 Cal.App.4th 934, 992), here it

strengthened the showing that Rivera pursued the victim to kill him. That is, these events occurred in Easy Rider gang territory. Per the People's gang expert, as Easy Rider gang members, Hernandez, Rivera, and Alfaro would have felt disrespected by the victim saying "[w]hat's up" to them, causing them to lash out. So they pursued the victim in a dangerous manner, and someone fired multiple shots which struck the victim's car. Regardless of who was the shooter, Alfaro and Rivera stated their intent clearly: they both said they wanted to dump on—shoot—the victim. Thus, Rivera's presence at the scene of the crime, companionship with his fellow gang members, and conduct before the offense provided sufficient evidence to support his liability for the offenses as an aider and abettor.[5]

**DISPOSITION**

The judgment is affirmed.
NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


LAVIN, Acting P. J.


EGERTON, J.

---

[5] The jury was not instructed on the natural and probable consequences doctrine.