[No. H029772. Sixth Dist. July 29, 2008.]

GEORGE PELLEGRINI, Plaintiff and Respondent, v.
DAVID J. WEISS et al., Defendants and Appellants.

[No. H029988. Sixth Dist. July 29, 2008.]

GEORGE PELLEGRINI et al., Plaintiffs and Appellants, v.
DAVID J. WEISS et al., Defendants and Appellants.

### COUNSEL

Pierce & Shearer and Andrew F. Pierce for Defendants and Appellants.

Murphy, Pearson, Bradley & Feeney, John H. Feeney and Thomas J. D'Amato for Plaintiff and Respondent and for Plaintiffs and Appellants.

### OPINION

**RUSHING, P. J.**—This is a consolidated action on appeal and cross-appeal by parties to a real estate transaction.[1]

Appellants are David J. Weiss (Weiss), and Larry Stephens, Hedy Stephens, Elia Gris, Taline Gris, Bernard Yuman, Candice Yuman, The Bernard Yuman and Candice Yuman Revocable Living Trust, Barry Monblatt, Ellen Monblatt, the Monblatt Revocable Living Trust, Patricia Weiss and the Roth IRA of Patricia Weiss (collectively the Telford Investors).

Respondents are George Pellegrini (Pellegrini), Pellegrini & Associates, and Century 21/Chesire Realty.

Weiss and Pellegrini entered into a joint venture agreement for the purchase and development of real property in the Aptos Hills called Telford Ranch. The parties eventually came to an impasse, with Pellegrini filing suit against Weiss for various causes of action including breach of contract and fiduciary duty. Weiss countersued Pellegrini for restitution and rescission.

Following trial, the jury returned a verdict in favor of Pellegrini on the breach of fiduciary duty claim only, awarding him $300,000 in damages. Pellegrini brought a motion for attorney fees that was denied by the trial court on the ground that there was no legal basis to award fees.

Weiss asserts numerous errors on appeal, including a lack of substantial evidence to support the jury's verdict for breach of fiduciary duty, trial court error in amending the complaint to conform to proof, ordering declaratory relief in favor of Pellegrini, and evidentiary rulings in limine. Weiss also asserts the verdict was inconsistent, the amount of damages was excessive, and the date for the running of interest on the judgment was incorrect.

---

[1] We dismissed appeal H029667 (*Pellegrini v. Weiss* (Aug. 30, 2007, H029667) [nonpub. opn.]) as taken from a nonappealable order, and the portion of the appeal in H029988 purporting to appeal the denial of a judgment notwithstanding the verdict by operation of law as untimely.

On cross-appeal, Pellegrini asserts the trial court erred in denying his motion for attorney fees.

### STATEMENT OF THE FACTS AND CASE

In 1999, Pellegrini learned about the availability of approximately 300 acres of undeveloped property in the Santa Cruz Mountains named Telford Ranch. Pellegrini approached Weiss about the Telford Ranch as an investment opportunity.

The Telford Ranch was owned by a corporation known as Telford, Inc., which was a wholly owned subsidiary of the corporation CKM, Inc. CKM, Inc., owned only Telford, Inc., which in turn owned only Telford Ranch; there were no other assets in either CKM, Inc., or Telford, Inc.

The only two shareholders in CKM, Inc., were Randy Cook, who owned 85 percent of the outstanding shares, and Ken Marks, who owned the remaining 15 percent of shares. Cook and Marks were interested in selling Telford Ranch, but wanted to structure the sale as one for stock in CKM, Inc., rather than a straight sale of the real property. Specifically, Cook wanted the buyers to purchase his shares for cash, while Marks wanted a stock-for-land exchange. In addition, Marks and his wife wanted to retain a separate fee simple interest in a portion of the Telford Ranch (after subdivision) in exchange for their 30 shares of CKM, Inc., stock.

Following a year of negotiations, the terms of the sale were agreed upon among the parties. Cook and Marks agreed to sell 100 percent of the stock in CKM, Inc., for a sum of $1,822,000 cash to Cook, and a specifically designated fee simple interest in the Telford Ranch to Marks. The parties prepared a stock option agreement for the purchase of 100 percent of the stock in CKM, Inc., that included an amendment specifying the parameters of the plot of land that would be conveyed to Marks. The amended stock option agreement granted Marks an exclusive easement as to a portion of the Telford Ranch allowing him to construct a minimum of a 3500-square-foot home and a garage on a specified site, a 15 percent tenancy in common interest in the property, trail rights on the existing roads and a share in the water system.

In order to effectuate the creation of the fee simple interest in the property that Marks negotiated at the outset, Marks's 30 shares of CKM, Inc., stock were placed in trust, and Weiss and Pellegrini were named as cotrustees. The only trust corpus was the 30 shares of CKM, Inc., stock, and all decisions with regard to that corpus required the unanimous agreement of Weiss and Pellegrini. After the Telford Ranch was subdivided and Marks received his fee simple deed in the land, the voting trust would be terminated, and Pellegrini and Weiss would receive full ownership of the remaining 30 shares of the CKM, Inc., stock.

While these negotiations with Cook and Marks were being finalized, in November 2000, Pellegrini and Weiss formalized their joint venture agreement in a memorandum of understanding (MOU). The relevant portions of the MOU specifying the investments and sharing of profits are as follows: "David J. Weiss and George Pellegrini voluntarily agree to enter into a Joint Venture Agreement to purchase 100% stock of the corporation owing the Telford Ranch described as approximately 330 acres of land located in the hills of Aptos, California. . . . The anticipated profits shall be divided as follows. Seventy-Five percent (75%) to the three investors contributing one-million-eight-hundred-and-seventy-five thousand ($1,875,000), and twenty-five percent (25%) shall be divided as follows: 50/50 or 12.5% each between George Pellegrini and David J. Weiss. In addition, the commission paid by the seller to Century 21 Cheshire, after the deduction of the Century 21 fee and deduction of the Century 21 Cheshire share shall be divided as follows: 2/3 to George Pellegrini and 1/3 to David J. Weiss. All other professional fees to carry out this Joint Venture shall be the cost of the corporation."

On November 27, 2000, Pellegrini and Weiss notified Cook and Marks that they wished to exercise their option to the Cook shares and the voting rights to Marks's shares. Pursuant to the stock option agreement, Pellegrini was paid $36,440 as a commission for the transaction, and in turn, Pellegrini paid Weiss his one-third share of the commission pursuant to the MOU.

On December 14, 2000, Pellegrini and Weiss executed both stock option agreements, and according to the terms of those agreements, each took title equally to the shares in CKM, Inc., formerly owned by Cook. Pellegrini and Weiss were granted 85 shares each of CKM, Inc., stock. In addition, Pellegrini and Weiss executed the voting trust agreement, and became cotrustees to 30 shares of stock in CKM, Inc., owned by Marks.

In February 2001, acting as an attorney for Telford, Inc., Weiss filed a statement of domestic stock corporation with the California Secretary of State, naming himself and Pellegrini as sole directors of Telford, Inc. Pellegrini was named chief executive officer, and Weiss was named secretary and chief financial officer. In addition, Weiss, acting as attorney for CKM, Inc., filed a statement of domestic stock corporation with the Secretary of State, naming himself and Pellegrini as sole directors of CKM, Inc. Weiss was named chief executive officer and chief financial officer, and Pellegrini was named secretary of CKM, Inc.

In February 2001, Weiss contacted Robert Schalk, an attorney certified as a specialist in tax to address taxation and corporate issues related to Telford, Inc., and CKM, Inc. Pellegrini, Weiss and Schalk had a meeting on February

21, 2001, to discuss Schalk's opinion on the matter. Schalk recommended that they immediately transfer Telford Ranch from Telford, Inc., to CKM, Inc., and dissolve Telford, Inc. Following that transaction, CKM, Inc., would be dissolved and the Telford Ranch would be deeded to the Telford Investors in their individual names. Schalk also recommended that the Telford Investors hold the property for a period of time and then convey their interests to an S corporation to be formed in the future. Although both Schalk and Weiss tried to convince Pellegrini to agree to the recommended course of action, Pellegrini did not acquiesce.

In July 2001, Weiss asked Pellegrini to sign documents to add the names of the Telford Investors to the stock they owned, as was recommended by Schalk. Pellegrini refused to do this, believing it would dilute his interest in the corporation. This became a considerable source of conflict between the parties. Weiss expressed concern to Pellegrini because they had not put any money up in the transaction, and Weiss believed he had a duty to the Telford Investors to have their names on the certificates.

On September 21, 2001, Weiss sent a certified letter to Pellegrini in which he expressed his interest in terminating their venture. In the letter, Weiss stated: "It has become very obvious to me that I will not be able to work with you on the Telford Property. [¶] . . . [¶] I have discussed the problem with my investors and they have authorized me to offer the following proposal: [¶] 1. You buy my investors and me out of the land deal or, [¶] 2. We buy you out of the land deal. [¶] If we do not get a written response to our proposal within 10 days of your receipt of this letter, my investors have authorized me to take whatever legal action is necessary to get you out of the project. I hope that you will cooperate with us to end our association, but your cooperation is not necessary for my investors to succeed."

Pellegrini responded on October 2, 2001, expressing his dissatisfaction with Weiss's letter. Pellegrini did not agree to any of the terms proposed in the letter. In light of Pellegrini's response, Weiss sent another letter to Pellegrini on October 17, 2001, stating: "I am in receipt of your letter dated October 2, 2001. Unfortunately you did not respond to my initial request, so I will make our position very clear. [¶] 1. We will not be able to continue under our contract to work together on the Telford Property. [¶] 2. Since you did not respond to our offer to buy you out we are offering you one of the following options: [¶] A. We will buy out your contractual 12.[5]% interest for the total sum of $175,000 as soon as possible. [¶] B. We do not buy you out now and you wait until the land is developed and sold to get your 12.[5]% profit, which may take three to ten years. However, you must agree not to interfere with the investors or me in completing our objectives. You will have no management or decision making duties and you will not represent yourself in

any way as having such authority. Also you will not contact any former Sellers, Attorneys, Title Companies or Santa Cruz County or City officials of any kind. In other words, you will remain silent as to all aspects of this project. [¶] If you do not agree to one of the above options, the investors have authorized me to proceed legally to protect their respective interest."

Pellegrini did not accept any of the provisions put forth by Weiss. In November 2001, Weiss informed Pellegrini that he was in the process of preparing a lawsuit against him, that he should not set foot on the property, and that he should not represent that he was an owner.

On March 7, 2002, Weiss filed a statement of domestic stock corporation concerning Telford, Inc., with the California Secretary of State stating that he and his wife, Patricia Weiss, would now be the officers and directors of Telford, Inc. On March 22, 2002, Weiss and Patricia Weiss executed a certificate of election to wind up and dissolve, and certificate of dissolution regarding Telford, Inc. In doing so, they certified under penalty of perjury that they constituted a majority of the directors in office.

On March 19, 2002, Weiss filed a domestic stock corporation concerning CKM, Inc., with the California Secretary of State stating that he and his wife would now be the officers and directors of CKM, Inc. On March 22, 2002, Weiss and Patricia Weiss executed a certificate of election to wind up and dissolve and certificate of dissolution regarding CKM, Inc. In doing so, they certified under penalty of perjury that they constituted a majority of the directors then in office and that the election was made by the vote of 100 percent of the shares of the corporation, and representing at least 50 percent of the voting power of the corporation.

Weiss voided Pellegrini's stock certificate, which represented 85 shares of CKM, Inc., and withdrew money from the corporate bank account, removing $40,000 and placing it into an account to which Pellegrini had no access. Weiss purported to transfer tenancy-in-common interests in the Telford Ranch into the individual names of the Telford Investors in proportion to their investments, and a 15 percent interest to the Markses.

On July 22, 2002, Pellegrini, through counsel, requested of Weiss that he be allowed to inspect the corporate records of Telford, Inc., and CKM, Inc. Pellegrini set the time for inspection as August 2002. Weiss did not respond to the request.

In April 2003, Pellegrini filed suit against Weiss in Santa Cruz Superior Court alleging claims of breach of contract, breach of fiduciary duty, and fraud. At the same time, Pellegrini filed a motion for peremptory writ of

mandate and for enforcement of right to inspect records of a corporation, seeking to grant Pellegrini access to inspect corporate records for the Telford, Inc., and CKM, Inc., entities.

In response, Weiss and Telford Investors filed suit against Pellegrini individually, Pellegrini & Associates Realtors, Inc., and Century 21/Cheshire Realty for restitution damages and rescission.

Following the filing of a number of amended complaints, the matter did proceed to trial in April 2005. The court granted Pellegrini's in limine motion that his legal causes of action for breach of contract, breach of fiduciary duty and fraud be tried before the equitable issues. In addition, the court granted Pellegrini's in limine motion to exclude evidence that Pellegrini & Associates was not qualified to do business in California at the time of the alleged events in this case.

On May 6, 2005, the jury returned a verdict in favor of Pellegrini on the breach of fiduciary duty claim against Weiss, and awarded Pellegrini $300,000 in damages. The jury found for Weiss on the breach of contract and fraud causes of action.

The court set the matter for court trial on the equitable issues to begin on July 29, 2005. The court ruled that Pellegrini and Weiss were released from all duties, obligations and liabilities under the MOU; that Pellegrini owed no duty or obligations with regard to the Telford Ranch transaction and had no right to the Telford Ranch property; that Pellegrini was not responsible or liable for any repayment of funds or monetary loses related to the Telford Ranch; and that Pellegrini was not responsible for any defect in title to any portion of the Telford Ranch. The court released Pellegrini and Weiss from all duties under the stock option agreements and stock option exercise agreements.

Judgment was entered on October 5, 2005, but a statement of decision was not filed until December 22, 2005. For procedural reasons, the original judgment was vacated and reentered on January 8, 2006.

Weiss brought a motion for a new trial and a motion for a judgment notwithstanding the verdict. The motions were heard in December 2005, but were reset and denied on March 7, 2006. Weiss filed a number of notices of appeal, and Pellegrini filed a motion to dismiss. (See fn. 1, *ante.*)

Pellegrini filed a motion for attorney fees and nonstatutory costs that was denied on May 11, 2006. Pellegrini filed a timely notice of cross-appeal.

### DISCUSSION

I. *Weiss's Appeal of the Judgment in Favor of Pellegrini for Breach of Fiduciary Duty*

In his appeal, Weiss attacks the judgment finding he breached his fiduciary duty to Pellegrini. Weiss asserts (1) there was not substantial evidence to support the judgment; (2) the trial court erred in amending the complaint to conform to proof; (3) the trial court erred in declaring Pellegrini had no liability for future title problems on the Telford Ranch; (4) the trial court erred in ruling in limine to exclude evidence of Pellegrini & Associates' corporation status; (5) the verdict was inconsistent; (6) the amount of damages awarded was excessive; and (7) the date set by the trial court for running the interest on the damages award was incorrect. Each issue is discussed separately below.

### Substantial Evidence to Support the Verdict for Breach of Fiduciary Duty

"In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]. All issues of credibility are likewise within the province of the trier of fact. [Citation.] 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' [Citation.] All conflicts, therefore, must be resolved in favor of the respondent." (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925–926 [101 Cal.Rptr. 568, 496 P.2d 480].) We also bear in mind that " 'the jury properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material. [Citations.]' " (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67–68 [107 Cal.Rptr. 45, 507 P.2d 653].)

█ The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) resulting damage. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 483 [80 Cal.Rptr.2d 329].)

█ The existence of a fiduciary duty here depends on whether the parties were in a joint venture with each other, since partners or joint venturers have a fiduciary duty to act with the highest good faith towards each other regarding affairs of the partnership or joint venture. (*BT-I v. Equitable Life*

*Assurance Society* (1999) 75 Cal.App.4th 1406, 1410–1411 [89 Cal.Rptr.2d 811]; *Laux v. Freed* (1960) 53 Cal.2d 512, 522 [2 Cal.Rptr. 265, 348 P.2d 873].) The essential element of a joint venture is an undertaking by two or more persons to carry out a single business enterprise jointly for profit. (*Nelson v. Abraham* (1947) 29 Cal.2d 745, 749 [177 P.2d 931].) "The rights and liabilities of joint adventurers, as between themselves, are governed by the same rules which apply to partnerships." (*Boyd v. Bevilacqua* (1966) 247 Cal.App.2d 272, 288 [55 Cal.Rptr. 610].) A joint venture agreement may be informal or oral. (*Fitzgerald v. Provines* (1951) 102 Cal.App.2d 529, 538 [227 P.2d 860].) Whether a joint venture relationship exists is a question of fact, depending on the intention of the parties. (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 820 [195 Cal.Rptr. 421]; *Boyd v. Bevilacqua, supra*, 247 Cal.App.2d at p. 285.)

The evidence produced at trial supports a finding of a fiduciary duty between Weiss and Pellegrini through the formation of a joint venture. Both Pellegrini and Weiss testified that they came together for the common purpose of developing real estate for profit. The agreement between the parties shows that Pellegrini was charged with identifying the property to be developed, had a relationship with the seller of that property, and had expertise in how to develop and subdivide the property. Weiss was to provide the capital for the investment, as well as codirect the development and sale of the property with Pellegrini.

Evidence of the existence of a fiduciary duty can be found not only in the testimony of the parties, but also in the MOU executed by the parties memorializing their understanding of the agreement. The MOU clearly stated that Pellegrini and Weiss would work together toward the common goal of acquiring, developing and selling the Telford Ranch property, and provided for a specific profit-sharing formula.

It is notable that only now on appeal does Weiss argue the lack of a fiduciary duty owed to Pellegrini. Indeed, at trial the parties stipulated to a joint jury instruction on the breach of fiduciary duty claim that acknowledges the existence of a fiduciary duty owed between the parties based upon their joint venture that stated as follows: "George Pellegrini and David J. Weiss each claim that they were harmed because each other breached fiduciary duties owed as a Co-Joint Venturer, Co-Trustee and Officer and Director. In this respect, each of the parties is agent and trustee of the other and they must account in accordance with the terms of the agreement between them. Each Co-Venturer was required to act in the highest good faith toward one another, to not act for the unilateral benefit of himself or the Telford Investors, and to not fail to disclose the material facts. The law imposes on George Pellegrini, as a real estate broker, the same obligation of undivided service and loyalty

that it imposes on trustee in favor of his beneficiary. To establish this claim, a party must prove all of the following: [¶] 1. That the other party breached the duty to act in the highest good faith toward them; [¶] 2. That they were harmed; and [¶] 3. That the other party's conduct was a substantial factor in causing that harm."

■ There was substantial evidence produced in the trial court to demonstrate that Weiss breached his fiduciary duty to Pellegrini through their joint venture, and that Pellegrini suffered harm as a result. Once Pellegrini refused to take the action to dissolve the corporations as suggested by Schalk, Weiss took unilateral action, including offering to buy Pellegrini out of his share of the corporation, and his expected 12.5 percent profit pursuant to the agreement for $175,000. This sum was not reasonable in light of the value of the projected endeavor, as Weiss himself testified to at trial, as over $23 million.

Moreover, once Pellegrini refused Weiss's offer, Weiss took steps to dissolve the corporations, going so far as to offer what appear to be false statements to the California Secretary of State about the status of Telford, Inc., and CKM, Inc. Weiss presented no substantial evidence at trial in the form of corporate minutes or resolutions authorizing him to oust Pellegrini as CEO of Telford, Inc., and secretary of CKM, Inc., and replacing Pellegrini with Weiss's wife in both capacities. Nor did Weiss offer substantial evidence to justify his act of cancelling Pellegrini's stock certificate for 85 shares of CKM, Inc., or of withdrawing funds from the corporate bank account in the amount of $40,000 and placing them in an account that Pellegrini had no access to.

Weiss focuses heavily in his appeal on the fact that Pellegrini was not a licensed real estate broker in his individual capacity at the time of the transaction, asserting the MOU was unenforceable in its entirety as a result. Weiss also implies Pellegrini's lack of appropriate individual licensure also somehow justified his actions in ousting him from the corporations and cancelling his stock certificates. However, the trial court specifically found that Pellegrini & Associates was a valid corporation in California, had a corporate broker's license, and that Pellegrini was acting as the corporation's appointed agent. During motions in limine, the court took judicial notice of documents showing Pellegrini & Associates had been issued a certificate of revivor from the State of California, showing the corporation to be in good standing, as well as a certificate of relief from contract voidability from the Franchise Tax Board that granted relief from July 1, 1997, to May 28, 2003, covering the period of time for the transactions in this case.

While Pellegrini may not have had an individual real estate license at the time of this transaction, and the MOU represented that he did, this fact is not

fatal to the case, and certainly does not justify Weiss's conduct. Pellegrini's service as a real estate agent was clearly contemplated by the parties, and he did in fact serve in that role to a degree. However, he was doing so under the authority of Pellegrini & Associates, a licensed real estate broker, as its designated agent.

Moreover, contrary to Weiss's assertions, the joint venture was more than an agreement for Pellegrini to provide broker services for which he would be compensated. The MOU clearly provided that both Pellegrini and Weiss would purchase stock in the landowning corporation, direct a future corporation, and share in profits. The fact that Pellegrini was not licensed as an individual is not relevant to whether or not Weiss breached his fiduciary duty.

Based on our review of the record, we find substantial evidence to support the jury's finding that Weiss breached his fiduciary duty to Pellegrini arising out of their joint venture.

### Trial Court's Amendment to Conform to Proof

Weiss asserts on appeal that the trial court erred in amending the complaint at the close of evidence to add Pellegrini & Associates as plaintiff to conform to proof. The general rule is that "[a]mendments to conform to proof should be liberally granted. [Citations.]" (*20th Century Cigarette Vendors v. Shaheen* (1966) 241 Cal.App.2d 391, 396 [50 Cal.Rptr. 773].) However, "the allowance of amendments to conform to the proof rests largely in the discretion of the trial court and its determination will not be disturbed on appeal unless it clearly appears that such discretion has been abused. [Citations.]" (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31 [69 Cal.Rptr. 568, 442 P.2d 648].)

Weiss argues the amendment was improper because Pellegrini & Associates were not parties to the MOU, and therefore, there was no fiduciary duty owed to them, and even if they were parties to the MOU, their corporate status was suspended at the time of the transaction. Even in light of these assertions, Weiss does not demonstrate how the court's order allowing the addition of Pellegrini & Associates as a plaintiff was a manifest abuse of discretion, or more importantly, how the amendment prejudiced Weiss. Indeed, the court noted that Weiss brought Pellegrini & Associates into the action when it was named as defendant in their complaint.

Moreover, Weiss offers nothing to demonstrate how he and the Telford Investors would be in a different, better position had the court not added Pellegrini & Associates to conform to proof. The jury found Weiss breached a fiduciary duty to Pellegrini, and awarded him $300,000 in damages. There is

nothing to indicate the jury would have decided the case differently had Pellegrini & Associates not been added as plaintiff.

*Trial Court's Denial of Weiss's Request for Restitution from Pellegrini*

Weiss asserts on appeal the trial court erred in denying their equitable claim for restitution of $72,880 paid to Pellegrini in brokerage fees.

In its statement of decision regarding the restitution claim, the court stated: "The Weiss Defendants failed to prove their claim for restitution of brokerage fees earned by Pellegrini. The Court found that Pellegrini & Associates Realtors, Inc., a plaintiff and defendant in this action, is a properly licensed real estate broker. The Court found that Pellegrini & Associates, Inc., is a corporation in good standing with the Department of Real Estate and the Secretary of State. The Weiss Defendant claim for restitution is denied."

Weiss argues the trial court erred because its finding that Pellegrini & Associates was licensed did not give Pellegrini the right to collect a real estate commission. In the alternative, Weiss asserts even if Pellegrini was licensed individually, he breached his fiduciary duties, barring him from recovery of fees. Neither of these arguments supports this court's reversal of the order denying restitution.[2]

Initially, the court concluded that Pellegrini was appointed by Pellegrini & Associates to serve as a broker in the transaction. Therefore, the fact that Pellegrini & Associates was not a party to the MOU is immaterial for the purpose of payment of the commission, as is the fact that Pellegrini was not licensed as a broker in his individual capacity.

With regard to the second claim that Pellegrini breached his fiduciary duty requiring him to return the commission paid, Weiss asserts the jury never resolved this issue, and there are no findings in the statement of decision or judgment addressing it. However, Weiss did not address this claimed deficiency in the trial court. In *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130 [275 Cal.Rptr. 797, 800 P.2d 1227], our Supreme Court concluded that a litigant who fails to bring alleged deficiencies in the trial court's statement of decision to its attention waives the right to complain of such errors on appeal, with the consequence that the reviewing court will imply findings that are supported in the record in the prevailing party's favor. (*Id.* at p. 1132.)

---

[2] Because we find no error in the trial court's denial of Weiss's claim for restitution, we need not consider Weiss's additional claim on appeal that the matter should be remanded for trial on the issue of Weiss's entitlement to punitive damages.

Therefore, the issue of the deficiency of the decision is waived, and we will imply findings supported by the record in the prevailing party's favor. (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1132.) We find no error in the trial court's decision to deny restitution to Weiss of Pellegrini's commission.

### The Trial Court's Finding Absolving Pellegrini of Liability for Potential Future Title Problems

Weiss asserts on appeal that the trial court erred in declaring that Pellegrini is not responsible or liable for any defect in title of any portion of the Telford Ranch. The primary basis for Weiss's argument is the lack of guidance from the jury verdict, coupled with the trial court's failure to make factual findings and communicate them in the statement of decision justifying the equitable relief granted to Pellegrini.

The question whether declaratory relief is appropriate in a given case is addressed to the trial court's discretion. (*Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 892–893 [72 Cal.Rptr.2d 73].) "Whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion . . . and the court's decision to grant or deny relief will not be disturbed on appeal unless it be clearly shown . . . that the discretion was abused." (*Hannula v. Hacienda Homes* (1949) 34 Cal.2d 442, 448 [211 P.2d 302].)

As with the issue of Pellegrini's alleged breach of fiduciary duty discussed above, and Weiss's complaint that the trial court failed to make certain factual findings in its statement of decision, here, Weiss also argues the trial court failed to make appropriate factual findings justifying its grant of equitable relief in favor of Pellegrini. Weiss again makes reference to the statement of decision omitting critical facts. However, as above, Weiss did not bring the perceived deficiency in the decision to the trial court's attention below. As a result, the deficiency is waived, and we will imply findings that are supported in the record in Pellegrini's favor. (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1132.)

The implied findings in Pellegrini's favor, coupled with the broad discretion enjoyed by the trial court in granting declaratory relief leads us to the conclusion the trial court did not err in its order absolving Pellegrini of any future defects in title in the Telford Ranch.

### The Trial Court's In Limine Ruling Excluding Evidence

Weiss asserts the trial court erred in excluding evidence that Pellegrini & Associates was disqualified from doing business as a California corporation at the time of the transaction in this case.

█ Generally speaking, in limine motions are disfavored in cases in which they are used not to determine in advance the court's projected ruling if presented with an evidentiary objection during trial, but instead to serve as a substitute for a dispositive statutory motion. The increasing prevalence of the practice of using in limine motions in this way produces substantial risk of reversal, particularly in situations in which the constitutional rights to jury trial and confrontation are implicated. As we stated in the recent case of *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1594 [71 Cal.Rptr.3d 361]: "The disadvantages of such shortcuts are obvious. They circumvent procedural protections provided by the statutory motions or by trial on the merits; they risk blindsiding the nonmoving party; and, in some cases, they could infringe a litigant's right to a jury trial. (Cal. Const., art. I, § 16.)" (*Ibid.*) "The better practice in nearly every case is to afford the litigant the protections provided by trial or by the statutory processes." (*Id.* at p. 1588; see also *Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore* (2008) 162 Cal.App.4th 1331 [76 Cal.Rptr.3d 649].)

In the present case, however, it appears Pellegrini's motion in limine was used for its proper purpose—as a ruling in advance of an evidentiary objection that was bound to come up during the course of the trial.

Here, Pellegrini moved in limine to exclude all evidence of or reference to Weiss's affirmative defense that Pellegrini & Associates was not qualified to do business in the State of California. The court granted Pellegrini's motion, and ordered the evidence excluded. In doing so, the court took judicial notice of documents showing Pellegrini & Associates had been issued a certificate of revivor from the State of California, showing the corporation to be in good standing, as well as a certificate of relief from contract voidability from the Franchise Tax Board that granted relief from July 1, 1997, to May 28, 2003, covering the period of time for the transactions in this case. Consequently, the court determined evidence of the corporation's qualification to do business was irrelevant for trial.

" 'Broadly speaking, an appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion.' [Citation.] This standard of review applies to a trial court's determination of the relevance of evidence, as well as to whether the evidence's probative value is substantially outweighed by its prejudicial effect. [Citations.] The trial court's 'discretion is only abused where there is a clear showing [it] exceeded the bounds of reason, all of the circumstances being considered.' [Citation.]" (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639–640 [92 Cal.Rptr.2d 115].)

■ Considering the fact that Pellegrini & Associates was qualified to do business in California during the period of this transaction, albeit retroactively, evidence of the fact that Pellegrini & Associates was at one time suspended as a corporation was irrelevant to the issues of this trial. Indeed, the only reason we can see that Weiss would want to introduce this evidence to the jury would be to besmirch the reputation of Pellegrini, and sully him and his business in their eyes. Such evidence, with little probative value, and the potential of high prejudicial effect was the proper subject of an in limine motion, and was properly excluded by the court. (Evid. Code, § 352.)

### The Consistency of the Verdict

Weiss argues the verdict in this case is inconsistent. Citing *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336 [100 Cal.Rptr.2d 446] (*Shaw*), Weiss asserts that because the jury found there was no breach of contract on Weiss's part, yet found Weiss breached his fiduciary duty to Pellegrini, the result is inconsistent. The premise flowing from that argument is that the fiduciary duty is implied in the joint venture, and therefore is a term of the contract. As a result, a breach of fiduciary duty would by definition be a breach of contract.

In *Shaw*, a wrongful termination action, the court found the verdict inconsistent, because the jury found the defendant employer breached the covenant of good faith and fair dealing in terminating the plaintiff, an implied term in all contracts, and yet did not find a breach of contract. The *Shaw* court determined that the jury's findings on these two causes of action were inconsistent, leading to a conclusion that the plaintiff was both an at-will employee, in which case there would be no breach of contract, and one that could only be terminated for cause, in which there would be a breach of the covenant of good faith and fair dealing. (*Shaw, supra,* 83 Cal.App.4th at pp. 1342–1345.)

■ The fatal flaw in Weiss's argument is that the fiduciary duty that exists because of the relationship between parties in a joint venture does not arise from the existence of a contract, as the covenant of good faith and fair dealing is implied in every contract. *Shaw* and its rational are inapplicable to this case. The fact that the jury here found no breach of contract and did find a breach of fiduciary duty is not inconsistent.

### The Amount of Damages

Weiss asserts, with no accompanying legal authority, that the damages award in the amount of $300,000 is excessive and should be reversed.

The amount of damages awarded in a case is a question of fact to be determined by the jury. (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d

498, 506 [15 Cal.Rptr. 161, 364 P.2d 337].) As such, it is subject to our evaluation of whether it is supported by substantial evidence. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) In examining the sufficiency of the evidence to support an award of damages, it is not required that we be able to precisely recreate the jury's reasoning. (*City of Pleasant Hill v. First Baptist Church* (1969) 1 Cal.App.3d 384, 408–409 [82 Cal.Rptr. 1].) We will uphold a verdict if it is within the range of possibilities supported by any of the testimony. (*Id.* at pp. 409–410.)

█ In this case, Pellegrini's experts testified about his damages. Kelvin Sheahn conservatively valued the property at $4 million undeveloped, and approximately $17 million developed. Weiss himself testified the property could potentially be worth $23 million. Under the terms of the MOU, Pellegrini was entitled to 12.5 percent of the profits from the endeavor. As stated in *Contra Costa Water Dist. v. Vaquero Farms, Inc.* (1997) 58 Cal.App.4th 883 [68 Cal.Rptr.2d 272], "it is within the province of the trier of fact to reconcile conflicting testimony when presented with wide discrepancies in the estimates of value and damage by witnesses for each side. [Citations.] With the evidence in this state, the trier of fact 'may reasonably have deemed unrealistic various factors' upon which the witnesses based their respective valuations. [Citation]." (*Id.* at p. 905.)

Here, the damages award of $300,000 is well within the range of possibilities supported by any of the testimony. As a result, there is no reason in this case to overturn the jury's award of damages.

*The Date Set by the Trial Court for Running the Interest on the Damages Award*

Weiss asserts the trial court erred in setting the date for the running of interest on the damages award at July 29, 2005, the date the trial court considered and ruled on the equitable claims and confirmed the jury verdict. Weiss submits the date for the running of interest should instead be January 13, 2006, the date judgment was finally entered.

In support of this argument, Weiss relies on Code of Civil Procedure section 685.020, subdivision (a), which provides: "[I]nterest commences to accrue on a money judgment on the date of entry of the judgment."

Rule 3.1802 of the California Rules of Court dealing with interest on judgments, provides that "[t]he clerk must include in the judgment any interest awarded by the court *and the interest accrued since the entry of the verdict.*" (Italics added.)

█ We read rule 3.1802 of the California Rules of Court as directing the clerk to calculate the continuation of any *prejudgment* interest that may have

been awarded from the date of the verdict through the date of the judgment. Were we to construe California Rules of Court, rule 3.1802 as providing that *postjudgment* interest accrues between verdict and judgment, it would conflict with Code of Civil Procedure section 685.020. A rule of court cannot take precedence over a statute, however, so we decline to construe California Rules of Court, rule 3.1802 in that fashion.

We acknowledge that it once was the law that "whether or not interest is included in the damage award (either by the court or by the jury), the award must bear interest at the legal rate during the period following rendition of the verdict or decision and until entry of judgment." (*Dixon Mobile Homes, Inc. v. Walters* (1975) 48 Cal.App.3d 964, 975 [122 Cal.Rptr. 202] (*Dixon*), disapproved on other grounds in *Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815, fn. 18 [148 Cal.Rptr. 22, 582 P.2d 109].) At the time *Dixon* was decided, however, Code of Civil Procedure section 1033 expressly required postverdict interest to be included in judgments. (Code Civ. Proc., former § 1033, quoted in *Dixon, supra,* 48 Cal.App.3d at p. 974.) There is no equivalent statutory provision today, so we decline to apply the *Dixon* rationale to this case.

Accordingly, we conclude that Pellegrini is entitled to interest from the date of entry of the final judgment only, January 13, 2006.[3]

## II. *Pellegrini's Cross-appeal for Reversal of the Trial Court's Order Denying Him Attorney Fees*

Pellegrini asserts in his cross-appeal that the trial court erred in denying his motion for attorney fees. The basis for his attorney fees claim is that he is the prevailing party, having secured a $300,000 damages award for his breach of fiduciary duty claim, and pursuant to Code of Civil Procedure section 1021, and Civil Code section 1717,[4] he should be entitled to recover his fees.

Here, the trial court denied Pellegrini's request for attorney fees on the grounds that there was no legal basis on which to award them. In its written

---

[3] Pellegrini argues in the alternative that in the event we find he is entitled to interest from the date of judgment, rather than verdict, we should set that date as October 5, 2005, the date the judgment was entered originally. However, the October 5 judgment was vacated because it was entered without findings, rendering it void. (*In re Marriage of Abargil* (2003) 106 Cal.App.4th 1294, 1301 [131 Cal.Rptr.2d 429].) Because the first judgment was rendered void, it cannot be used to begin the calculation of interest upon the date of entry of judgment.

[4] Civil Code section 1717, subdivision (a) provides in part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

decision denying the motion, the court stated: "[Pellegrini's] Motion for Attorneys Fees and Non-statutory costs is denied as there was no applicable written agreement providing for same and there is no other legal basis to award them."

Because we consider whether there is a legal basis for fees in this case, our review is de novo. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 614 [71 Cal.Rptr.2d 830, 951 P.2d 399].)

Pellegrini argues his entitlement to attorney fees is as a result of the attorney fees provisions in the agreements between the parties. Specifically, there were a total of three agreements that both Pellegrini and Weiss were parties to: the MOU, the stock option agreement, and the voting trust agreement. It is undisputed the MOU contains no attorney fees provision. Therefore, the question is whether the attorney fees provisions found in the stock option agreement and the voting trust agreement provide a basis for Pellegrini's recovery of fees.

While both the stock option agreement and the voting trust agreement do contain attorney fees provisions, Pellegrini's lawsuit was for the enforcement of the MOU, and the MOU was the only agreement attached to and incorporated by reference into the complaint. The MOU does not contain an attorney fees provision.

 Pellegrini asserts the three agreements were part of a single interrelated relationship or transaction, and pursuant to Civil Code section 1642,[5] should be taken together for purposes of the attorney fees provision. It is a question of fact whether multiple contracts are intended to be elements of a single transaction under Civil Code section 1642. (*BMP Property Development v. Melvin* (1988) 198 Cal.App.3d 526, 531 [243 Cal.Rptr. 715].) Where, as here, the record is silent, we must presume the trial court found all facts necessary to support the order. (*Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451, fn. 4 [268 Cal.Rptr. 202].)

Here, the two other agreements were not "between the same parties" as is required under Civil Code section 1642. The stock option agreement was between R. Cook Enterprises, Inc., as seller and Weiss and Pellegrini as buyers, and the agreement was fully performed without incident. Moreover, the attorney fees provision in the stock option agreement was narrow, and provided for fees in actions "for breach or to enforce or declare rights under any provisions of this Agreement." The complaint did not allege a breach of

---

[5] Civil Code section 1642 provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

the stock option agreement, nor did it seek to declare rights under the provisions of the agreement.

The voting trust agreement is equally problematic, as it was between the shareholders in CKM, Inc., Kenneth and Muriel Marks on one side and Weiss and Pellegrini as trustees on the other side, and concerned only the 15 percent minority stock interest in CKM owned by the Markses. The attorney fees provision in the agreement applied to all matters "arising from this agreement." The 15 percent ownership belonging to the Markses was never in the dispute; rather, Weiss and Pellegrini disputed the remaining 85 percent of the property, which was not the subject of the voting trust agreement. The complaint did not allege any terms of the voting trust, nor did it allege a breach of those terms, did not allege any fiduciary duty to Pellegrini arising from the trust, nor did it allege a breach of fiduciary duty arising from the trust. The voting trust agreement was not incorporated by reference into the complaint. Therefore, there was no dispute arising from the agreement that would give rise to attorney fees.

The present case is markedly similar to *Pilcher v. Wheeler* (1992) 2 Cal.App.4th 352 [3 Cal.Rptr.2d 533] (*Pilcher*), in which the court determined that no attorney fees should be awarded. In *Pilcher*, the parties had a partnership agreement for the development of real property that contained no attorney fees provision. When problems arose between them, the plaintiff sued for breach of contract and breach of fiduciary duty pursuant to the partnership agreement. Following trial and a favorable verdict, the defendants moved for attorney fees, asserting the construction contract for the development of the property that contained an attorney fees provision was part of an integrated agreement pursuant to Civil Code section 1642. The *Pilcher* court rejected the defendants' argument, finding the construction contract was peripheral and not intended to be integrated into the partnership agreement.

Here, we arrive at the same conclusion as the court in *Pilcher*. The MOU was the only agreement upon which Pellegrini asserted his causes of action, and was the only agreement incorporated by reference into the complaint. The stock option agreement and the voting trust agreement were peripheral to the MOU, and were not part of an integrated agreement pursuant to Civil Code section 1642. Therefore, we find no error in the trial court's denial of Pellegrini's motion for attorney fees on the ground that there was no legal basis to award such fees.

### DISPOSITION

With regard to Weiss's appeal, the judgment is modified to include a calculation of interest from the date of entry of final judgment of January 13, 2006. As modified, the judgment is affirmed.

With regard to Pellegrini's cross-appeal, the order denying attorney fees is affirmed.

Each party shall bear its own costs on appeal.

Premo, J., and Elia, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied October 22, 2008, S166518. Werdegar, J., did not participate therein.