Filed 2/27/15  Rodriguez v. The Condon Group CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JESUS RODRIGUEZ et al.,<br><br>   Plaintiffs and Appellants,<br><br>     v.<br><br>THE CONDON GROUP LLC et al.,<br><br>   Defendants and Respondents. | G049245<br><br>(Super. Ct. No. 30-201100517158)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, H. Michael Brenner.  (Retired judge of the Orange County Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Shahnaz Hussain for Plaintiffs and Appellants.

Tharpe & Howell, Paul V. Wayne and Eric B. Kunkel for Defendants and Respondents.

Jesus Rodriguez, Silvia Lopez, Carla Rodriguez, and Maricela Rodriguez (collectively referred to as the Tenants unless the context requires otherwise), appeal from the trial court's order denying their request for attorney fees as the prevailing parties in their action against former landlord Tobi Ishi Apartments aka, The Condon Group, LLC (hereafter Condon).[1]  The Tenants prevailed on their causes of action for negligence and premises liability, but the jury found Condon not liable for breach of the warranty of habitability.  As the prevailing party on two tort claims, the Tenants sought attorney fees based on the terms of an agreement they did not actually sign.  The court determined the agreement did not authorize the recovery of attorney fees and denied the Tenants' request on that basis.  We conclude the agreement was unenforceable and need not reach the issue of whether it should be construed as permitting attorney fees in this case.  And although the parties' operative rental agreement may authorize attorney fees, the Tenants abandoned that claim on appeal.  Accordingly, we affirm the trial court's order denying the Tenants' request for attorney fees.

I

The Tenants executed a standard month-to-month agreement in February 2007 to rent an apartment in Santa Ana.  Soon after moving in, the Tenants experienced numerous problems, including water leaks, mold, lack of heating, vermin, and insects.  The Tenants became sick and notified Condon about the various problems.  Unsatisfied with the response they received, the Tenants filed a complaint against Condon alleging negligence, premises liability, constructive eviction, intentional infliction of emotional distress, and breach of the warranty of habitability.

---

[1]      Tenants also sued Condon's managers Francisco and Dolores Jimenez.  We will refer to the two managers by their first names to avoid confusion with no disrespect intended.  When appropriate we will refer to Condon and the two managers collectively and as a single entity "Condon."

Before the jury heard the case, the court dismissed the constructive eviction and emotional distress claims. A jury entered a verdict in favor of Condon on the breach of warranty of habitability claim. It returned a verdict in the Tenants' favor on the negligence and premises liability causes of action. After a reduction of 50 percent for comparative fault, the jury awarded the Tenants a combined total of $46,506.50 in damages (Silvia $16,446, Jesus $8,590.50, Maricela $10,521.50, Carla $10,948.50).

The Tenants filed a motion for attorney fees seeking $276,249. The Tenants argued they were clearly the prevailing parties in the action and fees were authorized by the terms of their rental agreement and Civil Code section 1717.

In their moving papers, the Tenants asserted they had two rental agreements, attached as exhibit No. 7 and exhibit No. 8 to their motion. However, the attorney fee request was based solely on their interpretation of paragraphs 11 and 13 (hereafter Paragraph 11 and Paragraph 13) found in exhibit No. 7 (hereafter the Monthly Agreement).

Paragraph 11 of the Monthly Agreement stated, "The undersigned Resident(s), whether or not in actual possession of the premises, are jointly and severally liable for all obligations under this rental agreement, and shall indemnify owner for liability arising prior to the termination of the rental agreement for personal injuries or property damage caused or permitted by Resident(s), their guests or invitees. This does not waive 'Owner's' duty of care to prevent personal injury or property damage where that duty is imposed by law." And Paragraph 13 of the Monthly Agreement stated, "If any legal action or proceeding be brought by either party to enforce any part of this Agreement, the prevailing party shall recover, in addition to all other relief, reasonable attorney's fees and costs." The Tenants argued Paragraph 11, an indemnity agreement, authorized the recovery of attorney fees for tort claims because the last sentence clarified the Tenants did not waive the owner's duty of care towards them. They asserted

3

Paragraphs 11 and 13 read together authorized attorney fees to the prevailing party in a tort action.

Condon opposed the motion on several grounds. First, it argued the Tenants were relying on an unenforceable agreement and they were ignoring a valid attorney fee agreement contained in the parties' operative rental agreement. Condon recited trial evidence proving the Monthly Agreement was not signed by the Tenants. The apartment manager, Dolores, admitted she signed the Tenants' names. When asked why she created and signed a second contact, she explained the Tenants owed a $500 deposit and she wanted a copy of the rental agreement and their financial obligation for her records. Condon asserted that based on this undisputed evidence the Monthly Agreement's attorney fee provisions were not binding on the parties because the agreement lacked mutual consent.

Condon argued the sole operative rental agreement was exhibit No. 8 (attached to the Tenants' motion for attorney fees). It is a two page standardized form agreement, and we will refer to this agreement as the Standard Rental Agreement. The parties agree they all executed the Standard Rental Agreement. Although difficult to read because the text is blurry, it plainly contains an attorney fee provision (Paragraph 21) and an integration clause (Paragraph 26). We cannot decipher all the words contained in these two paragraphs, but Condon asserts on appeal that Paragraph 21 stated, "Attorneys [*sic*] Fees Waiver of Jury Trial: If any legal action or proceeding is brought by Owner or Renter related to this Agreement, the prevailing party shall be entitled to recover attorneys [*sic*] fees *not to exceed $500.00.*" Condon claims Paragraph 26 stated, "Entire Agreement: The foregoing constitutes the entire agreement between the parties and supersedes any oral or written representation or agreement contrary hereto. Tenant represents that he has relied solely on his own judgment, experience and expertise in entering into this Agreement."

4

In its opposition, Condon argued fees were limited to $500 pursuant to the terms of the Standard Rental Agreement, and in any event, the Tenants cannot recover any fees because they did not prevail on a contract claim. Alternatively, Condon argued the amount of fees requested by the Tenants' counsel was not reasonable.

The Tenants filed a reply insisting attorney fees could be based on the indemnity provision of the Monthly Agreement. They explained the provision required renters to indemnify the owner for tort liability, and also provided the owner may be "just as liable." They maintained the attorney fee provision was broadly written to apply to any legal action brought by either party "'to enforce any part'" of the agreement, which would include Paragraph 11. The Tenants argued their negligence/premises liability action arose from the contract because it fell within the definition of Paragraph 11. They concluded the action sought to enforce a breach of Paragraph 11.

With respect to Condon's arguments about the enforceability of the Standard Rental Agreement (exhibit No. 8), the Tenants asserted the contents were illegible and it was impossible to find or read the provision limiting attorney fees to $500. They argued Dolores handwrote the terms of the contract between the parties in both rental agreements and when there are several contracts relating to the same matter, they are to be taken together. (Citing Civ. Code, § 1642.) The Tenants asserted the rental terms were the same on both contracts and they did not need to sign the Standard Rental Agreement for it to be effective. They recognized the agreements were signed at different times, but because the Monthly Agreement was signed last they claimed it superseded the former agreement in the event any terms conflicted. Alternatively, the Tenants argued that because the provisions in the Standard Rental Agreement are not legible, the provisions in the Monthly Agreement must control. They failed to provide any case authority to support their theory they may enforce an agreement they did not sign. Similarly, they provided no case authority to support the notion a valid standard

5

contract that is difficult to read should be ignored in favor of a more legible version they did not actually sign.

At the hearing, the court asked several questions about the Tenants' theory an indemnity provision would authorize attorney fees for tort claims. The court stated Paragraph 11 appeared to be an oddly worded indemnity agreement, requiring tenants to indemnify for any loss incurred by the landlord and the court concluded it did not create a right to recover attorney fees for tort actions. The court determined Paragraph 11 stated the landlord did not waive its duty but this statement would not "affect [the] contract in any way." The court found that because there was no recovery for tort causes of action under Paragraph 13, the Tenants were not entitled to recover attorney fees.

II

On appeal, the Tenants assert the trial court incorrectly interpreted Paragraph 11 and Paragraph 13 of the Monthly Agreement and erroneously failed to award attorney fees. The Tenants argue they were the prevailing parties, and under Civil Code section 1717, attorney fees were authorized by the express terms of the Monthly Agreement. Their argument is premised on their belief the trial court determined the Monthly Agreement (exhibit No. 7) was "the controlling rental agreement at the September 12, 2013 hearing because the trial court referred to it" and failed to mention the second rental agreement (the Standard Rental Agreement in exhibit No. 8). We note the Tenants' opening brief contains no other analysis regarding enforceability of the Standard Rental Agreement. In their reply brief, the Tenants briefly discuss the issue by asserting the two agreements "should be read together" but maintain the copy of exhibit No. 8 is not legible and, therefore, the court correctly relied on exhibit No. 7 (the Monthly Agreement).

We conclude the premise of the Tenants' argument is fundamentally flawed, and consequently their arguments on appeal lack merit. It is true that the trial court asked many questions about the meaning of the Monthly Agreement's indemnity

6

provision (Paragraph 11). The reporter's transcript of the hearing shows the court found the indemnity provision was oddly worded and ultimately concluded it could not be construed to authorize attorney fees. In deciding Paragraph 11 was inapt, the court did not reach the larger issue of whether the agreement was enforceable or valid because it was not signed by the Tenants. This omission cannot be interpreted as a ruling in the Tenants' favor on this issue. There is nothing in the record to support such an inference. The court made no ruling on the enforceability of either rental agreement.

In any event, because our standard of review is de novo we are not bound to follow the trial court's analytical approach or ruling. "'[T]o determine whether an award of attorney fees is warranted under a contractual attorney fees provision, the reviewing court will examine the applicable statutes and provisions of the contract. Where extrinsic evidence has not been offered to interpret the lease, and the facts are not in dispute, such review is conducted de novo. [Citation.]' [Citation.] 'As the case law makes clear, the test is not whether the cause of action sounds in tort or contract. Instead, the sole question is the intent of the parties: did they intend to authorize the prevailing party to recover its attorney fees for a tort cause of action. [Citations.]' [Citation.]" (*Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 182-183.)

*A. Mutual Intent Determines the Operative Agreement*

In this case before us, there was evidence of two rental agreements. Because the issues litigated at trial related to claims of inhabitability and negligence, there was no need to determine which contract was controlling. The jury's verdict and damages were based on factual findings of negligence and premises liability. Consequently, the jury was not required to decide which document was the operative agreement. The issue emerged only in the context of determining the Tenants' attorney fee motion.

Before delving into contract interpretation, we must first determine the exact language at issue, i.e., what was the operative agreement? Was it the Standard

7

Rental Agreement, a combination of two rental agreements, or was it the Monthly Agreement? A court's goal "in interpreting a contract is to give effect to the mutual intention of the contracting parties at the time the contract was formed. (Civ. Code, § 1636.) "Mutual intent is determinative of contract formation because there is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense. [Citation.]" (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 359.)

There was undisputed evidence presented at trial regarding the parties' mutual intent with respect to the Standard Rental Agreement. The parties agree this contract was executed by both sides and it contained the relevant rental terms such as the names of the Tenants, the monthly rent of $950, the start date of February 1, 2007, and the obligation to pay a $500 security deposit. This agreement was executed on February 1, 2007, and was signed by Condon, Jesus Rodriguez and Silvia Lopez.

The same mutual intent is not evident with respect to the Monthly Agreement. Dolores testified she alone filled out the form agreement to serve as a copy of the parties' actual rental agreement. She intended to use the document to prove the Tenants owed a $500 security deposit. Dolores admitted she signed on behalf of Condon, and she handwrote the Tenants' names at the bottom of this contract. Dolores stated she kept her version of the rental agreement in her files and intended to let the Tenants know she had a copy if they needed to see it. The document does not reflect when Dolores prepared the Monthly Agreement because she did not include a date when she signed the document. It can be inferred from Dolores's testimony that she believed the standardized printed terms in the Monthly Agreement were the same as the Standard Rental Agreement and, therefore, she believed she was creating the second document solely for record keeping purposes.

This inference is supported by the Tenants' testimony. When Lopez was questioned about the Monthly Agreement at trial, she testified she did not remember ever

8

seeing the agreement and she denied signing it. She declared the handwriting was not hers. There was no evidence the Tenants saw this agreement or assented to terms different from their original Standard Rental Agreement.

Based on all of the above, we conclude the operative agreement is the Standard Rental Agreement. The Monthly Agreement is not enforceable because there is no evidence the parties mutually intended to be bound by its terms. Additionally, there is nothing to suggest either party intended to create a second rental agreement to supersede or replace their original Standard Rental Agreement. If the roles were reversed, and Condon was seeking to enforce a provision of the Monthly Agreement, there is no doubt the Tenants would prevail by arguing it was unenforceable due to lack of mutual intention.

*B. The Two Rental Agreements Cannot be Combined*

The Tenants believe the Monthly Agreement contains more favorable terms than the Standard Rental Agreement. They are in the awkward position of seeking to replace their actual rental agreement with a version they did not sign. Their solution on appeal is to urge this court to treat the two rental agreements as one transaction pursuant to Civil Code section 1642. They then ask us to enforce the paragraphs that are easier to read and ignore the paragraphs that are nearly illegible. Not surprisingly, there is no legal authority to support what they are trying to accomplish.

Civil Code section 1642 allows two or more writings to be "taken together." It specifically provides, "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (E.g., *Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 580 [informed consent agreement and arbitration form signed at the same time should be construed together]; *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1060 [trial period plan and loan modification agreement should be construed together]; *Fillpoint, LLC v. Maas* (2012) 208 Cal.App.4th 1170, 1178 [purchase agreement and

9

employment agreement entered roughly the same time as part of single transaction must be construed together]; *Nevin v. Salk* (1975) 45 Cal.App.3d 331, 335, 338 [agreement of sale, two notes, real property deed of trust, and chattel mortgage formed single contract for sale of veterinary practice]."

Generally, whether multiple contracts are intended to be elements of a single transaction under Civil Code section 1642 is a question of fact. (*Pellegrini v. Weiss* (2008) 165 Cal.App.4th 515, 534.) We found no facts in this record to support the conclusion the two rental agreements should be read together. True, they both relate to a single transaction but rather than supplementing each other, they are duplicative and do not refer to each other. Indeed, each rental agreement is printed on a standardized form intended for landlords and tenants to easily use in their transactions. Each document is clearly intended to stand alone as the complete agreement. There is nothing to suggest the two agreements are each a part of one transaction that the parties intended to incorporate in a single document. Civil Code section 1642 does not apply in these circumstances.

Moreover, at trial the parties never suggested the two agreements were intended to be read together or incorporated into one document. With respect to the Tenants, Lopez stated she was unaware of the Monthly Agreement. "A secondary document becomes part of a contract . . . provided the terms of the incorporated document are *readily available* to the other party. (*King v. Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 357, italics added.) Such was not the case here. The evidence shows the Tenants never knew the Monthly Agreement existed when they were renting the apartment.

With respect to the landlord's (Condon's) intention, Delores stated she created the Monthly Agreement to merely serve as a copy or record of the Standard Rental Agreement previously signed. She did not suggest the two contracts were two parts of a single transaction. We found no evidence indicating the parties understood

10

they needed or desired two separate standardized rental agreements to formalize their transaction.

And finally, we conclude the Tenants fail to appreciate the purpose of Civil Code section 1642. On one hand, the Tenants assert they wish to enforce both agreements and read them together. On the other hand, they assert any illegible terms in one agreement should be ignored. This argument does not support a full integration of the two documents as part of one transaction. The Tenants wish to join the two agreements to have one attorney fee provision *supersede* and replace the attorney fee provisions in the other. Civil Code section 1642 serves to treat two instruments covering the same subject matter as having the effect of all terms being incorporated into one document. It does not authorize the elimination of less favorable or conflicting terms.

*C. Interpretation of the Standard Rental Agreement*

The Tenants did not seek attorney fees below or on appeal based on the attorney fee provision contained in the Standard Rental Agreement. The fact it is difficult to read is not dispositive. What ends our analysis is the Tenants' apparent abandonment of the issue. They had the burden below and on appeal to establish the existence of a contract provision authorizing attorney fees to the prevailing party on tort causes of action. On appeal, an argument may be deemed waived or abandoned if appellant fails to present relevant legal authority or reasoned argument. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785*; Mansell v. Board of Administration (*1994) 30 Cal.App.4th 539, 545-546 [it is not the proper function of Court of Appeal to search the record on behalf of appellants or to serve as "backup appellate counsel"]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [appellate court not required to consider points not supported by citation to authorities or record].) The Tenants do not urge us to undertake an interpretation of the Standard Rental Agreement so we will not endeavor to do so.

11

III

We affirm the trial court's order denying attorney fees.  Respondents shall recover their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


BEDSWORTH, J.