Filed 6/25/21  P. v. Gonez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL VICTOR GONEZ,<br><br>    Defendant and Appellant. | B304817<br><br>(Los Angeles County<br>Super. Ct. No. VA151697) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debra Cole-Hall, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Michael V. Gonez guilty of attempted voluntary manslaughter and of assault with a deadly weapon after he fought with and stabbed Martin Garcia. Gonez claimed he acted in self-defense. Although the jury rejected that defense, Gonez contends on appeal there was insufficient evidence he did not act in self-defense. We disagree and therefore affirm the judgment.

## BACKGROUND

I.  Prosecution's case

In June 2017, Gonez was living at a property his father had owned.[1] In addition to a main house where Gonez lived, there were two other residential structures on the property. The victim, Garcia, lived at one of the structures but had moved out several months before June 9, 2017. Garcia told a neighbor he was moving out because of problems with Gonez.[2]

When Garcia lived at the property, his son sometimes stayed with him. In 2016 or 2017, Gonez told Garcia's son that he and his " 'fuckin dad just watch.' " In February 2017, Garcia's son heard what sounded like a sledgehammer hitting the ground outside their home. When he looked outside, he saw a raccoon with its head smashed and Gonez running to the main house.

---

[1] Gonez and his brother shared an interest in the property, but there was evidence they did not get along. Also, Gonez's brother did not live at the property.

[2] Garcia had been served with a no-fault eviction notice because the structure where he lived violated building codes.

Lorenzo Melchor lived in the back structure on the property with his sister, Rebeca Melchor.[3]  At about 7:30 p.m., on June 9, 2017, Lorenzo heard a man yell, " 'Help.  Neighbors help.' "  Looking out a window, Lorenzo saw Gonez and Garcia, who was yelling for help and holding his hands above his head.  Garcia had nothing in his hands, but Gonez had something with a sharp point in his hand and was attacking Garcia.  Gonez made swinging motions at Garcia.  Rebeca saw Gonez holding Garcia by the head as Garcia lay face down on the ground.  Rebeca called Gonez's brother and told him that Gonez was beating a man.

A 911 caller reporting the event said he heard a man scream, " '[P]lease don't kill me.' "

A law enforcement officer who responded to the scene found Garcia's van parked in front of the property.  The officer smelled alcohol in the van.  Garcia was in the backyard.  He had suffered 11 wounds to his face, scalp, neck area, chest, and abdomen.  Five of those wounds were to the head area.  An officer smelled alcohol on Garcia.  No weapons were found near Garcia.  He survived but, as of trial, was in a functionally vegetative state.

Gonez was seen by a doctor that night.  He had tenderness along his neck and elbows and a small superficial laceration to his right palm.

Although the property had security cameras, officers did not find the recording device that should have been connected to the cameras.  Two knives, both with Garcia's DNA on them, were recovered.

---

[3] To avoid confusion, we refer to the Melchors by their first names, intending no disrespect.

II.     Defense case

Margarita Valle Solis testified that she had lived next door to Gonez for seven years. The night of June 9, 2017, she saw Garcia enter the property and walk toward Gonez. She recognized Garcia, as she had seen him and Gonez argue many times in the past. This time, Garcia pushed Gonez, who told Garcia to leave and that he did not want any problems. Garcia said he wouldn't leave, it wasn't Gonez's house, and he was there to see a friend. Garcia got close to Gonez with his arms out and hands clenched as if to hit Gonez. Solis saw Garcia touch Gonez "a bit." Not wanting to see more, Solis left.

Gonez also testified. He admitted he did not get along with Garcia, but this was because Garcia mistreated the property. Garcia urinated on a wall, took fruit Gonez grew to sell, and cut a cord to a surveillance camera. Gonez also admitted that he reported the building code violation that resulted in Garcia's eviction.

On the night Garcia was stabbed, Gonez heard something outside. It was Garcia. His eyes were glassy and bloodshot, and Gonez smelled beer on his breath. Gonez told him to leave, but Garcia refused, saying that Gonez did not own the property. Garcia, who weighed about 100 pounds more than Gonez, pushed him. Garcia began punching Gonez. Although Gonez said he did not want any problems, Garcia kept coming at him, trying to punch Gonez, who was able to avoid getting hit. Frustrated, Garcia grabbed a wood chair and swung it at Gonez, saying he was going to kill Gonez. Gonez backed away, and, fearing for his life, took out his pocketknife.

Gonez swung the knife at Garcia, striking Garcia's arm. Garcia threw the chair at Gonez, missing him. Repeating that he

4

was going to kill Gonez, Garcia rushed towards Gonez, picked him up, and "body slammed" him. Garcia began to choke Gonez, who then stabbed Garcia in the neck. Garcia released his grip, and Gonez stabbed Garcia under the ribs. Garcia tried to grab the knife, and he bit Gonez on the chest. Garcia redirected the knife so that it was pointing at Gonez's throat and said it was his turn now. At some point, Garcia stabbed Gonez's palm. Gonez managed to grab Garcia's hand and slash Garcia's face with the knife, and then Gonez stabbed him again. Garcia stumbled and fell. He said that Gonez's brother had sent him to hurt Gonez.

Gonez said he tried to call 911 but his cell phone was not working. However, law enforcement did not recover a cell phone.

Gonez testified that he acted out of fear for his life and that he did not intend to kill Garcia.

III.    Trial, verdict, and sentence

An information charged Gonez with attempted willful, deliberate, premeditated attempted murder (Pen. Code,[4] §§ 664, 187, subd. (a); count 1) and assault with a deadly weapon (§ 245, subd. (a)(1); count 2). The jury was instructed on the lesser included offense to attempted murder of attempted voluntary manslaughter, imperfect self-defense, and on the principles of self-defense. The jury found Gonez guilty on count 1 of attempted voluntary manslaughter (§§ 664, 192, subd. (a)), and of count 2. As to count 1, the jury found that Gonez used a deadly and dangerous weapon, a knife (§ 12022, subd. (b)(1)) and that he

---

[4] All further undesignated statutory references are to the Penal Code.

5

personally inflicted great bodily injury on Garcia (§ 12022.7, subd. (b)).

On January 15, 2020, the trial court sentenced Gonez on count 1 to 11 years 5 months and imposed but stayed sentence on count 2.

## DISCUSSION

Gonez contends that his convictions must be reversed because there was insufficient evidence he acted without justification. As we now explain, we reject this contention.

To determine whether the evidence was sufficient to sustain a criminal conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence, and we do not reweigh evidence or reevaluate a witness's credibility. (*People v. Booker* (2011) 51 Cal.4th 141, 172.) Reversal is not warranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Where, as here, self-defense is at issue, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant acted without justification. (*People v. Lloyd* (2015) 236 Cal.App.4th 49, 63; *People v. Adrian* (1982) 135 Cal.App.3d 335, 340–341.) Self-defense requires the defendant to have an honest and reasonable belief that bodily injury is about to be inflicted on the defendant. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064.)

6

The threat of bodily injury must be imminent, and any right of self-defense is limited to using only that force as is reasonable under the circumstances. (*Id.* at pp. 1064–1065; CALCRIM No. 3470.) Perfect self-defense is a complete defense to murder and to assault. (*People v. Moye* (2009) 47 Cal.4th 537, 550; *Minifie*, at p. 1069.) Whether self-defense was established is a question for the trier of fact. (*People v. Germany* (1974) 42 Cal.App.3d 414, 421.)

Here, Gonez argues that the evidence was insufficient to establish he acted without justification. There are two problems with this argument. First, the jury was instructed on self-defense but rejected it. Second, the argument amounts to an improper request we reweigh the evidence and reevaluate the credibility of witnesses, which we may not do on appeal. (*People v. Booker*, *supra*, 51 Cal.4th at p. 172.) Gonez's second argument thus rests primarily on evidence favoring him—namely, his and his neighbor Solis's testimony—and ignores that the jury was entitled to reject all or parts of that testimony, weaving a cloth of truth from *all* of the evidence. (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67–68.)

When all of the evidence is considered, it is more than sufficient to show that Gonez did not act in self-defense. Although Gonez and Solis testified that Garcia entered the property and initiated a fight with Gonez, the jury was entitled to reject that testimony. There was reason to reject it. Although Solis claimed she was not friends with Gonez and therefore had no reason to lie, there was evidence to the contrary: she and Gonez gardened together, she and her husband visited Gonez in jail while he awaited trial in this matter, and she gave him money to spend in jail. The jury also could have disbelieved

7

Gonez, who admitted he did not like Garcia (or other tenants for that matter) and had instigated Garcia's eviction. According to Garcia's son, Gonez had threatened Garcia in the past to "just watch" and had left a dead animal on Garcia's doorstep. This evidence of Gonez's prior threats to Garcia spoke to Gonez's motive and state of mind the night he stabbed Garcia. (See, e.g., *People v. San Nicolas* (2004) 34 Cal.4th 614, 668.)

As for Gonez's argument he used only that force necessary under the circumstances, there was sufficient evidence to the contrary. No weapons were found near Garcia, raising the reasonable inference he was unarmed. An assault with fists ordinarily will not justify use of a deadly weapon in self-defense. (*People v. Enriquez* (1977) 19 Cal.3d 221, 228, overruled on another ground by *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3.) Moreover, Garcia suffered 11 wounds, five of which were to his head area. The attack likely has left him in a permanent vegetative state. Gonez, however, suffered only tenderness along his neck and elbows and a small, superficial laceration to his hand. The jury could have believed that Gonez's injuries were inconsistent with his description of being violently choked and attacked by Garcia. The Melchors's testimony also undercut Gonez's version of events. They heard Garcia call for help and saw Gonez attack Garcia, who had his hands up with nothing in them. And although Gonez relies on evidence that Garcia had been drinking that night to buttress his self-defense theory, the jury could have believed it instead undercut that theory. That is, if Garcia was so intoxicated, how could he have attacked Gonez so vigorously? According to Gonez, Garcia "body slammed" him, mounted him, picked up a chair and swung it at him, and after being stabbed numerous times, including in the head, managed

8

to whisper that Gonez's brother sent him to hurt Gonez. From this evidence, the jury could have disbelieved Gonez's version of the attack and instead found that Gonez used unreasonable force under the circumstances.

Other evidence spoke to the absence of justification. For example, Gonez had security cameras which might have captured some of these events. Yet, the recording device was missing. The jury could have reasonably inferred that Gonez hid the device in the belief the video might not support his claim of self-defense. There were also inconsistencies between Gonez's story and the physical evidence. Gonez said he stabbed Garcia with one knife, his pocketknife that he used for gardening. However, two knives were recovered, and both had Garcia's blood on them. In addition, Gonez testified that he tried to call 911 from his cell phone, but no cell phone was recovered. That Gonez may have hidden evidence and did not try to get help for Garcia could go to his consciousness of guilt.[5] (See generally *People v. Holloway* (2004) 33 Cal.4th 96, 142 [evidence defendant made false statements about crime or fabricated or suppressed evidence relevant to consciousness of guilt].)

---

[5] The jury was instructed with CALCRIM No. 371 regarding consciousness of guilt.

9

In short, the evidence was more than sufficient to sustain the prosecution's burden of proving beyond a reasonable doubt that Gonez acted without justification.[6]

---

[6] Having rejected Gonez's contention on its merits, we need not address the People's argument that it is otherwise barred by *People v. Powell* (1949) 34 Cal.2d 196, 206, which held that an appellant is precluded from complaining he was convicted of a "lesser offense than the one of which he is guilty according to undisputed evidence, or according to that view of the evidence which, it indisputably appears, the trier of fact accepted."

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


EGERTON, J.


KALRA, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.